# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs June 2, 2010

## STATE OF TENNESSEE v. DON MASK BROWN, JR.

**Direct Appeal from the Circuit Court for Hardeman County**
**No. 08-01-0599     J. Weber McCraw, Judge**

**No. W2009-01001-CCA-R3-CD  - Filed November 12, 2010**

The Defendant-Appellant, Don Mask Brown, Jr., was convicted by a Hardeman County jury of second degree murder, a Class A felony, and aggravated robbery, a Class B felony. He was sentenced as a violent offender to forty years for second degree murder and, as a multiple offender, to fifteen years for the aggravated robbery. The trial court ordered these sentences to be served consecutively, for an effective sentence of fifty-five years in the Tennessee Department of Correction. On appeal, Brown claims: (1) the trial court violated the principles of <u>Blakely v. Washington</u> by finding that several enhancement factors were applicable; and (2) the trial court should not have imposed consecutive sentencing. Upon review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which DAVID H. WELLES and JOHN EVERETT WILLIAMS, JJ., joined.

Javier Michael Bailey, Memphis, Tennessee, for the Defendant-Appellant, Don Mask Brown, Jr.

Robert E. Cooper, Jr., Attorney General and Reporter; Cameron L. Hyder, Assistant Attorney General; D. Michael Dunavant, District Attorney General; and Joe Van Dyke, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

**Trial.** This case stems from the beating death of seventy-nine year old, William Mask, Jr. ("Mask"). The victim's wife, Peggy Ann Mask ("Peggy"), was present during the assault which led to her husband's death. She testified that on the night of the offense, they were returning home from dinner and were pulling into their driveway. They got out of their

truck and began walking towards the house. Peggy testified that a man suddenly attacked the victim, and a fight ensued. Peggy said the victim was repeatedly struck by something in the perpetrator's hand. The perpetrator forced Mask to the ground and started to kick him. Peggy said the perpetrator "just kept kicking him and kicking him and kicking him." Peggy screamed for help, got into the truck, and began to honk the horn. The perpetrator ran away and Peggy went to check on the victim. He had crawled back to the porch. Peggy said "blood was everywhere." A neighbor called the police and an ambulance arrived. Several pictures of the victim were entered as exhibits and showed substantial injuries to the victim's face and body.

Peggy testified that the police found two pairs of glasses at the scene of the accident. one of which belonged to the victim. Peggy did not recognize the other pair of glasses. She said the victim always kept his billfold in his pocket or in his bedroom. She believed the perpetrator stole his billfold because it was not found in either location. Peggy was unable to identify the perpetrator during the attack. She recalled hearing the perpetrator state, "'I'm going to kill you, you son-of-a-bitch.'"

Officer Michael Jones of the Bolivar Police Department testified that he responded to the scene of the attack. He found the victim sitting on the steps of his home with lacerations on his face and blood running down his body. Officer Jones said a large amount of blood was in the grass. He found a do-rag (head wrap) and two pairs of glasses. These items were found in the area where the attack took place. The do-rag was covered in blood. Officer Jones testified that Mask was taken to the hospital where he eventually died.

Dr. Staci Turner, an Assistant Medical Examiner for Davidson County, testified that she performed the victim's autopsy. She determined that the cause of death was blunt force injuries. Dr. Turner found lacerations, abrasions, and contusions on the victim's body. He had a fractured skull as well as a hemorrhage within his scalp tissue. Dr. Turner said the victim had blood around his brain and fluid in his lungs. The victim also suffered a heart attack after he was admitted for treatment. Dr. Turner said the heart attack resulted from the physical strain of blunt force trauma.

Officer Pat Baker of the Bolivar Police Department assisted with the investigation of the murder. He said the police obtained a blood sample from Brown. Officer Baker testified that the do-rag and glasses found at the scene of the attack contained Brown's DNA. Officer Baker said the victim's deoxyribonucleic acid ("DNA") was also found on the do-rag. Michael Turberville, a forensic scientist for the Tennessee Bureau of Investigation, corroborated Officer Baker's testimony that the do-rag contained DNA from the victim and Brown. He also said Brown's DNA was on the glasses.

Following the proof at trial, the jury convicted Brown of aggravated robbery and second degree murder. He was acquitted of first degree felony murder.

**Sentencing Hearing**. The State introduced the presentence report prepared by the Tennessee Board of Probation and Parole. It states that Brown was thirty-three years old when the offenses occurred. The report lists Brown's prior record, which includes felony convictions for vehicular homicide, felon in possession of a weapon, robbery, and escape. Brown was also convicted of driving with a revoked license, possession of marijuana, reckless endangerment, driving under the influence of an intoxicant, assault, criminal trespassing, driving with a suspended license (two counts), and making an improper turn.

At the sentencing hearing, the State's only witness was Austin Alexander Baker, III. Baker testified that he was a close friend of the victim's family. Baker said the victim's children were not present at the sentencing hearing because the victim's son was undergoing a critical medical procedure. The children gave Baker an impact statement which he read aloud at the hearing. The statement described the victim as the "cornerstone" of his family and an active member of his church and community. The statement included comments from the victim's nephew, niece, daughter, and son. They discussed the positive impact that the victim had on their lives and the considerable void left by his death. The victim's niece requested that Brown receive the maximum sentence allowed by law.

After reading the statement, Baker testified that he spent time with the victim's family following the murder. He said the victim's death had an emotional and financial impact on the family. Baker testified that the victim's wife, Peggy, could no longer rely on the victim's income. Baker stated that the victim also provided money to other family members and friends in need. Following Baker's testimony, the State informed the trial court that Peggy did not wish to testify.

Brown testified and disputed his conviction for vehicular homicide. He denied that he was at fault and claimed that his vehicle was forced off the road by an oncoming vehicle that crossed into his lane. His younger brother was the victim of the crash. Brown denied that he was under the influence of alcohol during the crash. He admitted that he was in possession of marijuana at the time, which led to an additional conviction. Brown stated that at the age of eighteen, he was convicted of robbery and escape. He denied that he tried to escape, claiming that the conviction was the result of a misunderstanding with the police.

Brown testified further that he had six children between the ages of eight and ten. He said he did what he could to take care of them. While in prison, Brown attended programs in anger management, coping, and life skills. He also worked towards obtaining his GED. Brown said he was able to find employment upon his release from prison. He denied that he

was a member of a gang, and said that the authorities mistakenly identified him as a gang member because of a tattoo on his back.

Brown acknowledged that he had a prior conviction for possession of a handgun. He claimed the gun accidentally went off after an argument with his brother. Brown said his brother was not present when the gun was fired. Brown testified that he pled guilty to all of his prior offenses. He denied having substance abuse issues, though he admitted to occasionally using marijuana. He claimed he was not responsible for the victim's death.

On cross-examination, Brown said he pled guilty to driving under the influence in connection with the vehicular homicide. He was also convicted of driving on a revoked license based on the same incident. Brown acknowledged that it was his third conviction for driving on a revoked license.

Katherine Brown, Brown's mother, testified that Brown had a close relationship with his children. Katherine Brown said she listened to her son's testimony, and she believed that he was truthful.

Following the testimony at the hearing and the arguments of counsel, the trial court found that Brown qualified as a Range II multiple offender based on his prior felony convictions. As a Range II offender, the sentencing range for second degree murder, a Class A felony, was between twenty-five and forty years. See T.C.A. § 40-35-112(b)(1), 39-13-210 (2007). The sentencing range for aggravated robbery, a Class B felony, was between twelve and twenty years. See T.C.A. § 40-35-112(b)(2), 39-13-402 (2007). The trial court imposed the maximum sentence of forty years for second degree murder and a fifteen-year sentence for aggravated robbery. Brown was required to serve one hundred percent of his sentence for second degree murder as a violent offender. See T.C.A. § 40-35-501(i)(1) (2007).

In sentencing Brown, the trial court found that several enhancement factors were applicable. It stated:

> The Court finds [the] following enhancement factors which are not themselves essential elements of this offense. Defendant does have a previous history of criminal convictions or behavior in addition to those necessary to establish the appropriate range. The Court does find that the victim of this offense was particularly vulnerable because of his age or physical disability. I think the testimony was he was a man in his early eighties. The defendant treated or allowed [the] victim to be treated with exceptional cruelty during the commission of the offense. Testimony at trial indicated that while the man

-4-

was down, he was repeatedly kicked. Also, the Court viewed the photographs during the trial.

> The Court also finds as an enhancing factor that . . . the personal injuries inflicted upon, sustained or taken from the victim [were] particularly great. And then the felony resulted in the death of the victim. So the Court does look at those as enhancing factors.

The trial court then addressed whether to impose consecutive sentencing. It found that consecutive sentencing was appropriate under the criteria set forth under Tennessee Code Annotated section 40-35-115. The trial court determined that Brown had an extensive criminal history. It also concluded that Brown was a dangerous offender whose behavior indicated little or no regard for human life. The trial court pointed to the beating of the victim and Brown's prior conviction for vehicular homicide. The trial court found that Brown showed no hesitation about committing a crime in which the risk to human life was high. Lastly, the trial court determined that confinement was necessary to protect society. This appeal followed.

## ANALYSIS

Brown raises three claims regarding sentencing. First, he argues that the trial court violated the principles of Blakely v. Washington, 542 U.S. 296, 124 S. Ct. 2531 (2004), by finding that several enhancement factors were applicable. Brown claims these enhancement factors should have been submitted to the jury, and not decided by the trial court. He does not contest whether particular enhancement factors were applicable. Second, Brown argues that his due process rights were violated because the State failed to provide notice of its intent to seek consecutive sentencing. Third, Brown claims consecutive sentencing was improper because his criminal history was not extensive. In response, the State argues that the trial court did not err in sentencing Brown. It claims his sentences are consistent with the purposes and principles of the Sentencing Act. The State also asserts that consecutive sentencing was appropriate because Brown is a dangerous offender with an extensive criminal record.

We will first address Brown's claim that the trial court violated the principles of Blakely by finding that several enhancement factors were met. On June 24, 2004, the United States Supreme Court held in Blakely that "'[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.'" Blakely, 542 U.S. at 301, 124 S. Ct. at 2536 (quoting Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S. Ct. 2348, 2362-63 (2000)). On June 7, 2005, after the United States Supreme Court's opinion in Blakely, the

Tennessee legislature passed a new sentencing law eradicating presumptive sentences and establishing advisory sentencing guidelines. Under the new sentencing law, "the trial court 'shall consider, but is not bound by' an 'advisory sentencing guideline' that suggests an adjustment to the defendant's sentence upon the presence or absence of mitigating and enhancement factors." State v. Carter, 254 S.W.3d 335, 344 (Tenn. 2008) (quoting T.C.A. § 40-35-210(c) (2006)).

Here, Brown committed the offenses in 2007. The Compiler's Notes to the amended Tennessee Code Annotated section 40-35-210 (2006) state that the amended act "shall apply to sentencing for criminal offenses committed on or after June 7, 2005." Because Brown committed the offenses in this case after June 7, 2005, he was sentenced under the 2005 amendments to the sentencing act. As previously stated, the amended act established advisory sentencing guidelines for trial courts. Accordingly, Brown cannot claim that the trial court erroneously employed judicial fact-finding in its application of enhancement factors because these enhancement factors under the amended sentencing act are merely advisory, not mandatory. See T.C.A. § 40-35-210 (2006), Compiler's Notes. He is not entitled to relief on this issue.

Brown's second claim is that his due process rights were violated by the imposition of consecutive sentencing. He asserts that the State did not provide notice of its intent to seek consecutive sentencing, and therefore his defense was prejudiced. Brown raised this issue at the sentencing hearing. The trial court rejected Brown's argument, finding that sufficient notice was given. The trial court also stated that it had an absolute duty to consider consecutive sentencing under Tennessee Code Annotated section 40-35-115.

We note that Brown failed to support his argument with any legal authority. He did not cite to any statute that required the State to provide notice.[1] Additionally, Brown does not refer to any cases holding that consecutive sentencing is dependent upon the defendant receiving notice. Ordinarily, Brown's failure to support his claim by legal argument or citation to legal authority would waive the issue. See Tenn. Ct. Crim. App. R. 10(b) ("Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court."); State v. Thompson, 36 S.W.3d 102, 108 (Tenn. Crim. App. 2000). However, we have reviewed the record and applicable authority, and we will address the merits of his claim.

---

[1] At the sentencing hearing, defense counsel was questioned about the legal basis for his assertion that the State had a duty to provide notice. Defense counsel responded that "the statute" required the State to give notice. Presumably, he was referring to Tennessee Code Annotated section 40-35-202(a), which requires the State to give notice of its intent to sentence the defendant as a multiple, persistent or career offender, not its intent to seek consecutive sentencing.

In State v. Anthony Reid, this court addressed an identical due process claim where the State failed to provide notice of its intent to seek consecutive sentencing. No. E2000-02619-CCA-R3-CD, 2001 WL 818205, at *10-12 (Tenn. Crim. App., at Knoxville, July 20, 2001). The court analyzed Tennessee Code Annotated section 40-35-115, which governs consecutive sentencing. Id. at *11. The court stated:

This statute places full responsibility for determining whether consecutive sentences are proper upon the trial judge. Specifically, it directs that where "a defendant is convicted of more than one (1) criminal offense, the court shall order sentences to run consecutively or concurrently as provided by the criteria in this section." Tenn. Code Ann. § 40-35-115(a) (1997) (emphasis added). The statute continues by stating that "[t]he court may order sentences to run consecutively if the court finds by a preponderance of the evidence" that any of the seven criteria enumerated in the statute apply. Id. § 40-35-115(b) (emphasis added). The imposition of consecutive sentences is not dependent upon any required notice from the prosecution. Neither does the statute require that a judge review information relevant to a defendant's sentence prior to the sentencing hearing in order to give a defendant "notice" of any kind.

Id. The court added:

Tennessee Code Annotated section 40-35-115 specifically enumerates what criteria the judge will examine when making a determination regarding consecutive sentences and, in doing so, also provides sufficient information so that a defendant may adequately prepare to argue against such sentencing if he so chooses.

Id. The court ultimately held that the defendant's due process rights were not violated by the State's failure to provide notice. Id. at *12. This holding is consistent with other decisions from this court. See State v. Cedric Terry, No. W1999-01568-CCA-R3-CD, 2001 WL 204185, at *7 (Tenn. Crim. App., at Jackson, Feb. 23, 2001) ("[T]he state is not required to give notice that it is seeking consecutive sentencing."); State v. Willie C. Powell, No. 02C01-9210-CR-00246, 1994 WL 34631, at *4 (Tenn. Crim. App., at Jackson, Feb. 9, 1994) ("In our view, [Tennessee Code Annotated section 40-35-202] "simply does not require any advanced notice of intent on the part of the state to seek consecutive sentencing."). We agree with the holdings of these cases and conclude that Brown's claim is without merit. He is not entitled to relief on this issue.

Brown's final claim is that the trial court erred in finding under Tennessee Code Annotated section 40-35-115 that he had an extensive criminal record, the basis upon which

the trial court imposed consecutive sentencing. Brown asserts that his criminal record is not extensive because (1) he has not had any convictions since 2000; (2) several of his convictions arose from the same incident; and (3) he denied being at fault for the vehicular homicide. The State argues the trial court properly imposed consecutive sentences in this case. We agree.

On appeal, we must review issues regarding the length and manner of service of a sentence de novo with a presumption that the trial court's determinations are correct. T.C.A. § 40-35-401(d) (2007). Nevertheless, "the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The defendant has the burden of showing the impropriety of the sentence. Sentencing Comm'n Comments, T.C.A. § 40-35-401(d) (2007). If the trial court followed the statutory sentencing procedure, made adequate findings of fact that are supported by the record, and gave due consideration and proper weight to the factors and principles that are relevant to sentencing under the sentencing act, this court may not disturb the sentence even if a different result was preferred. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). Because the trial court properly considered the purposes and principles of the sentencing act pursuant to sections 40-35-102 and -103 and all relevant facts and circumstances, our review will be de novo with a presumption of correctness. In conducting our de novo review, this court must consider:

(1) The evidence, if any, received at the trial and the sentencing hearing;

(2) The presentence report;

(3) The principles of sentencing and arguments as to sentencing alternatives;

(4) The nature and characteristics of the criminal conduct involved;

(5) Evidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114;

(6) Any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and

(7) Any statement the defendant wishes to make in the defendant's own behalf about sentencing.

T.C.A. § 40-35-210(b) (2007); State v. Carter, 254 S.W.3d 335, 343 (Tenn. 2008).

Where a defendant is convicted of one or more offenses, the trial court has discretion to decide whether the sentences shall be served concurrently or consecutively. T.C.A. § 40-35-115(a) (2007). A trial court may order multiple offenses to be served consecutively if it finds by a preponderance of the evidence that a defendant fits into at least one of the seven categories in section 40-35-115(b) (2007). An order of consecutive sentencing must be "justly deserved in relation to the seriousness of the offense." T.C.A. § 40-35-102(1) (2007). In addition, the length of a consecutive sentence must be "no greater than that deserved for the offense committed." T.C.A. § 40-35-103(2) (2007).

Here, the trial court found that the following criterion were met under section 40-35-115(b):

> (2) The defendant is an offender whose record of criminal activity is extensive;
>
> (4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high[.]

T.C.A. § 40-35-115(b) (2007).

The record supports the trial court's finding that criterion (2) and (4) were applicable. The presentence report shows that Brown has felony convictions for vehicular homicide, felon in possession of a weapon, robbery, and escape. The report states that Brown was also convicted of driving with a revoked license, possession of marijuana, reckless endangerment, driving under the influence of an intoxicant, assault, criminal trespassing, driving with a suspended license (two counts), and making an improper turn. Brown's criminal record is extensive regardless of whether he denied responsibility for particular offenses. This is sufficient to establish an extensive criminal history. In addition, the record shows that criterion (4) was met. At the age of thirty-three, Brown has already been convicted of second degree murder, vehicular homicide, aggravated robbery, robbery, driving under the influence, assault, and felon in possession of a dangerous weapon. These offenses certainly qualify Brown as a dangerous offender.

Based on the testimony at trial, Brown also exhibited "no regard for human life" and "no hesitation about committing a crime in which the risk to human life is high[.]" T.C.A. § 40-35-115(b)(4). The victim was seventy-nine years old when he was ambushed and brutally beaten by Brown. The victim's wife testified that the victim was hit before being forced to the ground and repeatedly kicked while on the ground. Peggy said she heard perpetrator state, "'I'm going to kill you, you son-of-a-bitch.'" The doctor who performed the autopsy concluded that Mask died as a result of blunt force injuries. The victim had a

fractured skull and a hemorrhage within his scalp tissue, as well as lacerations, abrasions, and contusions on his body. The trial court did not err in finding that both criterion (2) and (4) were applicable. Brown had the burden of proving that the impropriety of his sentence. He did not meet this burden, and therefore he is not entitled to relief.

## CONCLUSION

Based on the foregoing, the judgments of the trial court are affirmed.

_____
CAMILLE R. McMULLEN, JUDGE